UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TREVIN CLARK MORRISON JR.,

              Plaintiff,

     v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

             Defendant.

Case No. C16-1585-RSM

**ORDER ON SOCIAL SECURITY
DISABILITY**

## I.    INTRODUCTION

Plaintiff, Trevin Clark Morrison Jr., brings this action pursuant to 42 U.S.C. §§ 405(g), and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and Title XVI of the Social Security Act. Dkt. 1. This matter has been fully briefed and, after reviewing the record in its entirety, the Court AFFIRMS the Commissioner's final decision and DISMISSES this case with prejudice.

## II.    BACKGROUND

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

In September 2013, Mr. Morrison filed applications for DIB and SSI alleging disability commencing on January 1, 2012. Tr. 14. The applications were denied initially and upon reconsideration. *Id.* A hearing was held before Administrative Law Judge (ALJ) Laura Valente. *Id.* Mr. Morrison was represented by counsel, Steven M. Robey. *Id.* Leta R. Berkshire, a vocational expert (VE), also testified at the hearing. *Id.* ALJ Valente issued a decision on June 26, 2015, denying Mr. Morrison's claim. Tr. 14-27. The Appeals Council denied review, and the ALJ's decision became final. Tr. 1-6. Mr. Morrison then timely filed this judicial action.

### III.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to

more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.    EVALUATING DISABILITY

As the claimant, Mr. Morrison bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or is expected to last, for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. *Tackett*, at 1098-99. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, the inquiry ends without the need to consider subsequent steps. *Id.*; 20 C.F.R. §§ 404.1520, 416.920. Step one asks whether the claimant is presently engaged in "substantial gainful activity" (SGA). 20 C.F.R. §§ 404.1520(b), 416.920(b). [2] If he is, disability benefits are denied. *Id.* If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have such impairments, he is not disabled. *Id.* If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[2] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R § 404.1572.

then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the claimant is able to perform other work, then he is not disabled; if the opposite is true, he is disabled and benefits may be awarded. *Id.*

## VI. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found that:

**Step one:** Mr. Morrison has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date.

**Step two:** Mr. Morrison has the following severe impairments: degenerative disc disease, obesity, affective disorder, anxiety disorder, attention deficit disorder/attention deficit hyperactivity disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity:** Mr. Morrison has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with additional limitations. He can lift and carry 20 pounds occasionally, 10 pounds frequently, and sit, stand, and walk for 6 hours each in an 8-hour workday with frequent postural limitations, except balancing is unlimited. He can maintain concentration and pace in 2 hour increments, but only for simple repetitive task work for 8 hours total in an 8-hour workday. He can work superficially and occasionally with the general public (superficial is defined as the claimant is able to refer the public to others to respond to demands or requests, but the claimant himself cannot resolve these demands or requests). The claimant can work in the same room with an unlimited number of coworkers, but cannot and should not work in coordination with coworkers, and with this limitation it is not likely that the claimant will be a distraction to his coworkers or be distracted by them. He can respond to simple workplace changes that would be required for simple repetitive task work.

**Step four:** Mr. Morrison cannot perform past relevant work as a cashier II or sandwich maker.

**Step five:** As there are other jobs that exist in significant numbers in the national

---

[3] 20 C.F.R. §§ 404.1520, 416.920.

[4] 20 C.F.R. Part 404, Subpart P. Appendix 1.

economy that Mr. Morrison can perform, including hotel/motel housekeeper, inspector hand packager and semiconductor dye loader, he is not disabled.

Tr. 16-27.

## VII.    ISSUES ON APPEAL

Mr. Morrison argues the ALJ erred in: (1) failing to properly determine all of his severe impairments at step two; (2) evaluating his own symptom testimony; and, (3) evaluating the medical opinions of treating or examining doctors.  Dkt. 10 at 1.  As relief, Mr. Morrison contends this matter should be reversed and remanded for a new hearing.  *Id.*  As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## VIII.    DISCUSSION

### A.    Step Two

Mr. Morrison contends the ALJ erred in failing to include hypermobility joint syndrome and mild cervical degenerative disc disease as severe impairments at step two.  Dkt. 10 at 3-6.  The Court disagrees.

At step two of the sequential evaluation, the Commissioner must determine "whether the claimant has a medically severe impairment or combination of impairments."  *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii).  The claimant has the burden to show that (1) he has a medically determinable physical or mental impairment, and (2) the medically determinable impairment is severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  Thus, a medically determinable impairment must be established by objective medical evidence from an

acceptable medical source. 20 C.F.R. § 404.1521. "'Regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings[.]'" *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p).

In addition to producing evidence of a medically determinable physical or mental impairment, the claimant bears the burden at step two of establishing that the impairment or impairments is "severe." *See Bowen*, 482 U.S. at 146. An impairment or combination of impairments is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c). "The step two inquiry is a de minimus screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. An impairment or combination of impairments may be found "'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). However, the claimant has the burden of proving his "impairments or their symptoms affect [his] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

The ALJ found Mr. Morrison's hypermobility joint syndrome to be "a non-severe medically determinable impairment." Tr. 17. Specifically, the ALJ noted that "[o]n July 24, 2013, [Mr. Morrison] was diagnosed with this impairment but there are no diagnostic tests to support this diagnosis and the record does not suggest ongoing treatment for this impairment. Furthermore, the claimant did not allege any limitations that result from this impairment." *Id.* Mr. Morrison fails to establish the ALJ erred in finding hypermobility joint syndrome non-severe. Mr. Morrison first notes that he was diagnosed with hypermobility syndrome by

Jonathon W. Grymaloski, M.D. based on a physical examination and, therefore, the ALJ's statement that there are "no diagnostic tests to support this diagnosis" is incorrect. Dkt. 10 at 3; Tr. 390. The Court agrees that Dr. Grymaloski's diagnosis appears to have been based on a physical examination and range of motion testing and, while the quantitative results of that testing are not reflected in the treatment notes, this is sufficient to establish a medically determinable impairment. However, to the extent the ALJ erred in referring to a lack of diagnostic tests, the Court cannot conclude this error was harmful as the ALJ ultimately accepted hypermobility joint syndrome as a medically determinable impairment. Tr. 17.

Mr. Morrison also points out that in January 2015, Dr. Min Xu noted he had hypermobile joints which would predispose him to arthralgia issues. Dkt. 10 at 4; Tr. 734. Mr. Morrison argues this was significant probative evidence that the ALJ erred in failing to address in finding hypermobility joint syndrome non-severe. *Id.* The ALJ "need not discuss all evidence presented to her[;] [r]ather, she must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Social Security Ruling 96-8p also provides that "[t]he ALJ must consider all medical opinion evidence" and "[i]f the RFC assessment *conflicts* with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[5] *See* SSR 96-8p, 1996 WL 374184, *7 (Jul. 2, 1996) (emphasis added). Here, Dr. Xu does not find that Mr. Morrison's hypermobile joints have, in fact, caused any specific arthralgia issues or any specific limitations. Tr. 734. In fact,

_____

[5] Although "Social Security Rulings do not have the force of law, … [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n. 2 (9th Cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Paxton*, 865 F.2d at 1356)) (footnote omitted).

on examination, Dr. Xu noted that Mr. Morrison had no back pain on palpation, FABER and Shobers testing were normal, and he suspected mechanical reasons for Mr. Morrison's back pain complaints, including muscle spasms. *Id.* Dr. Xu's opinion does not set forth any limitations, much less limitations that conflict with the RFC assessment. Accordingly, Mr. Morrison fails to establish Dr. Xu's opinion was significant probative evidence which the ALJ harmfully erred in failing to discuss.

Dr. Grymaloski's diagnosis of hypermobility joint syndrome is based upon his examination findings demonstrating increased mobility around cervical, mid-thoracic, and lumbar vertebra, as well as the knees and elbows. Tr. 390. While there do not appear to be ongoing allegations of pain or limitations in the record with respect to Mr. Morrison's knees and elbows, the record does reflect ongoing complaints by Mr. Morrison with respect to his lower back and in between his shoulders. Tr. 57. However, the ALJ included degenerative disc disease of the spine as a severe impairment and discussed Mr. Morrison's allegations of pain and limitation as well as medical evidence related to this spinal impairment. Mr. Morrison fails to identify evidence indicating that hypermobility syndrome produces ongoing pain or symptoms independent of or different from those discussed by the ALJ with respect to this spinal impairment. That is, Mr. Morrison fails to demonstrate that hypermobility joint syndrome limits his ability to perform basic work activities to a greater or different extent than considered by the ALJ in evaluating the pain and symptoms attributed to degenerative disc disease.

Even if the ALJ did err in failing to find hypermobility joint syndrome to be a severe impairment at step two, Mr. Morrison fails to establish this error was harmful. Mr. Morrison does not identify any symptoms or functional limitations allegedly arising from Mr. Morrison's hypermobility syndrome that the ALJ failed to consider and either properly reject or include in

the RFC at step four. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (an ALJ's failure to list an impairment at step two is harmless where the ALJ considers any functional limitations imposed by the impairment at step four); *Burch v. Barnhart*, 400 F.3d 676, 682, 684 (9th Cir. 2005) (concluding that the ALJ did not commit reversible error in not considering the claimant's obesity at step two because the ALJ adequately considered the claimant's obesity in his residual functional capacity determination); *see also Baldwin v. Astrue*, No. ED CV 09–513–PJW, 2010 U.S. Dist. LEXIS 46175, at *5 (C.D. Cal. May 10, 2010) (stating that, even if "the ALJ erred at step two, any error was harmless because the ALJ accounted for the symptoms and limitations allegedly caused by her fibromyalgia in his residual functional capacity determination at step four"). The ALJ considered Mr. Morrison's allegations of back and shoulder pain and all evidence of related functional limitations in evaluating the medical evidence, including the medical opinion evidence, and in formulating the RFC at step four. Moreover, the ALJ necessarily considered hypermobility joint syndrome in discussing Dr. Grymaloski's opinion that it caused significant restrictions and limited Mr. Morrison to sedentary work. Tr. 363-364. The only question then becomes whether the ALJ properly discounted Dr. Grymaloski's opinion which, as discussed in more detail below, the Court finds he did. Thus, Mr. Morrison fails to establish the ALJ harmfully erred in failing to include hypermobility joint syndrome as a severe impairment at step two.

Mr. Morrison also makes the conclusory statement that the ALJ also erred in failing to include mild cervical degenerative disc disease as a severe impairment at step two. Dkt. 10 at 4, 6. However, the ALJ did include degenerative disc disease as a severe impairment at step two based on imaging which showed mild degenerative disc disease at the cervical, thoracic and lumbar levels. While the ALJ might have been more specific, he did not specifically exclude

cervical degenerative disc disease as a severe impairment.  Moreover, Mr. Morrison does not

argue or cite to evidence indicating Mr. Morrison's mild cervical degenerative disc disease

separately affected his ability to perform basic work activities.  *Edlund*, 253 F.3d at 1159-60

(the claimant has the burden of proving her "impairments or their symptoms affect her ability to

perform basic work activities.").  Mr. Morrison did not indicate, either in his function report or in

his testimony, that neck pain or any other neck-related symptoms, affected his ability to work.

Tr. 38, 56-57, 227-234.  While there are sporadic mentions of neck pain in the record, Mr.

Morrison did not regularly report neck-related symptoms to his providers and range of motion

testing showed only a slight reduction in cervical range of motion on some examinations.

Moreover, even accepting Mr. Morrison's argument that the ALJ should have

denominated cervical degenerative disc disease as a severe impairment at step two, he fails to

present any argument much less demonstrate that the error was harmful.  *See Shinseki v. Sanders*,

556 U.S. 396, 409 (2009)( "[T]he burden of showing that an error is harmful normally falls upon

the party attacking the agency's determination.").  Mr. Morrison does not identify any specific

functional limitations arising from his cervical degenerative disc disease that the ALJ failed to

consider at step four and, as such, he fails to meet his burden of demonstrating harmful error.

*Id.*; *see Lewis*, 498 F.3d at 911.  Although Dr. Grymaloski's opinions September 2012 and

March 2013 opinions list neck pain as a subjective complaint, as discussed below, the ALJ

considered and properly rejected those opinions.  As such, Mr. Morrison also fails to establish

the ALJ harmfully erred in failing to separately include mild cervical degenerative disc disease

as a severe impairment at step two.

### B.    Mr. Morrison's Testimony

Mr. Morrison testified he was unable to work due to pain between his shoulders and in

his lower back, anxiety, depression, difficulty sleeping and problems concentrating. Tr. 20. He indicated he was able to walk one mile before taking a break, and had difficulties paying attention, and following written and spoken instructions. *Id.* Mr. Morrison contends the ALJ erred in rejecting his symptom testimony. Dkt. 10. The Court disagrees.

The ALJ found the medical evidence of Mr. Morrison's underlying impairments might reasonably produce the symptoms alleged and did not find that Mr. Morrison was malingering. Tr. 20. Consequently, the ALJ was required to provide specific, clear and convincing reasons for rejecting Mr. Morrison's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). If the ALJ's reasons for discounting a claimant's subjective symptom testimony are supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Factors that an ALJ may consider in evaluating a claimant's symptom testimony include inconsistencies in testimony or between testimony and conduct, inconsistency with the medical evidence, daily activities, and unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

The ALJ reasonably considered the minimal objective medical findings in discounting Mr. Morrison's testimony regarding the severity of his symptoms. Tr. 20. A lack of supporting clinical findings can be properly considered by an ALJ in evaluating a claimant's symptom testimony. *See Burch*, 400 F.3d at 681 (claimant's back pain complaints not credible where "x-rays show only mild degenerative disc disease at L5–S1, and mild dextroscoliosis," because "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *see Osenbrock v. Apfel*, 240

1   F.3d 1157, 1165–66 (9th Cir. 2001) (ALJ properly discounted plaintiff's credibility regarding

2   pain because "there is no evidence of disuse muscle atrophy" because of pain, and because

3   "neurological and orthopedic evaluations revealed very little evidence of any significant

4   disabling abnormality of the plaintiff's upper or lower extremities or spine"). Here, the ALJ

5   reasonably discounted Mr. Morrison's testimony regarding the debilitating nature of his

6   symptoms in part on the grounds that: x-rays showed only mild degenerative disc disease in the

7   lumbar and thoracic spine with mild scoliosis; x-rays of the lower extremity were all normal with

8   no sign of arthritis; the record does not show symptoms included radiculopathy; on examination

9   between January 2012 and September 2013, Mr. Morrison frequently did not appear in distress

10  and rated his pain at only a 0 to 4 on a 10-point scale; and he frequently demonstrated a normal

11  gait and station on examination. Tr. 20 (citing Tr. 722, 726-733, 397, 401, 421, 424, 432, 441,

12  703, 706, 710).

13         The ALJ also reasonably discounted Mr. Morrison's symptom testimony based on

14  evidence that his impairments were treated and improved with conservative treatment. *See*

15  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (noting that favorable response to a

16  conservative treatment plan is a permissible basis for discounting testimony of all-disabling

17  pain); *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir.2007) (stating that "evidence of

18  'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an

19  impairment" (quoting *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). Here, the ALJ

20  noted that Mr. Morrison's back and shoulder pain were treated with conservative measures

21  including home exercises, massage therapy, and physical therapy. Tr. 20. Moreover, the ALJ

22  noted that Mr. Morrison participated in short-term physical therapy for two weeks in July 2012,

23  and on discharge was noted to have made good progress and very nearly completed his goals.

Tr. 347. Specifically, he was able to sit at a computer for 90 minutes and stand for 25 minutes, with only a 2 out of 10 on the pain scale. Tr. 345, 347. Mr. Morrison argues these were "modest" goals and do not demonstrate he is capable of working. However, the fact that with conservative treatment Mr. Morrison was able to perform this level of activity with minimal pain undermines his claim that these impairments were significantly debilitating. This was also a valid reason to discount Mr. Morrison's symptom testimony.[6]

The ALJ also reasonably discounted Mr. Morrison's symptom testimony as inconsistent with his daily activities. *See Molina v. Astrue*, 674 F.3d 1104, 112 (9th Cir. 2012). Specifically, the ALJ noted that Mr. Morrison alleged problems with anxiety and concentration but that the record shows he was able to attend college and generally received passing grades. Tr. 21 (citing Tr. 324). The ALJ also noted that Mr. Morrison was able to concentrate sufficiently to play video games and drive a vehicle and that his grades and ability to concentrate improved when he was taking medication. Tr. 20; *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ may rely upon a claimant's activities as grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Molina*, 674 F.3d at 1113. Here, the ALJ considered and reasonably rejected Mr. Morrison's testimony that his concentration difficulties were significantly disabling on the grounds that the activities discussed above show

---

[6] Mr. Morrison argues the ALJ erred in discounting his symptom testimony on the grounds that he is obese. Dkt. 10 at 9. However, the ALJ does not specifically discount Mr. Morrison's testimony because he is obese but merely acknowledges the evidence that he is obese. Tr. 21. Mr. Morrison also implies that the ALJ did not properly consider his obesity in the disability evaluation. Dkt. 10 at 9. However, the ALJ included obesity as a severe impairment at step two and acknowledged it in evaluating the evidence at step four. Tr. 21. Mr. Morrison fails to identify any symptom or limitation stemming from obesity that the ALJ failed to consider and either properly reject or account for in the RFC. As such, to the extent Mr. Morrison raises this argument he fails to establish the ALJ harmfully erred. *See Shinseki*, 556 U.S. at 409 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

that he is more functional than he claims.  Tr. 22, 62 (when asked what problem he would have with a job with no lifting and where he could sit all day, Mr. Morrison indicated his biggest problem would be with concentration).

The ALJ also reasonably considered Mr. Morrison's work history in discounting his symptom testimony.  Specifically, the ALJ noted that, shortly before Mr. Morrison alleged the onset of disability, he stopped working for reasons unrelated to his alleged impairments.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (In evaluating a claimant's symptom testimony an ALJ may consider the fact that the claimant stopped working for reasons unrelated to his alleged impairments).  Mr. Morrison was physically and mentally capable of performing light work as a sandwich maker, a job he held for nearly a year, when his employment was terminated for reasons unrelated to his alleged impairments in October 2011.  Tr. 60.  However, Mr. Morrison alleged he was disabled just a few months later and does not appear to allege a significant change or deterioration in his symptoms in that time.  Mr. Morrison does not challenge this reason for discounting his symptom testimony and under the circumstances the Court finds the ALJ also reasonably discounted Mr. Morrison's testimony on this basis.

In sum, the ALJ did not err in discounting Mr. Morrison's symptom testimony.

## C.      Medical Opinion Evidence

Mr. Morrison contends the ALJ erred in discounting the opinions of his former treating physician Dr. Grymaloski.  Dkt. 10.  The ALJ must provide "clear and convincing reasons" to reject the un-contradicted opinion of a treating or examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996).  When contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.*

In April 2012, Dr. Grymaloski completed a Functional Assessment form. Tr. 341-346. Dr. Grymaloski noted that Mr. Morrison was poorly conditioned from inactivity and weight gain and performed range of motion testing. Dr. Grymaloski opined that Mr. Morrison could lift 20 pounds occasionally and 2 pounds frequently, could sit for most of the day, and walk and stand for brief periods with postural limitations. *Id.* The ALJ assigned partial weight to this opinion. Tr. 22. The ALJ accepted the limitation to occasionally lifting 20 pounds as consistent with the tests showing some shoulder pain. *Id.* However, the ALJ rejected the limitation on standing and walking as inconsistent with tests showing full range of motion in the lower extremities. *Id.* The ALJ also rejected the limitation to frequently lifting 2 pounds as unsupported and unexplained. *Id.*

An ALJ may discount a doctor's opinions where the doctor's opinions are not supported by his own medical records or his own clinical findings. *See e.g., Tommasetti*, 533 F.3d at 1041; *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996). An ALJ also need not accept a medical opinion that is brief, conclusory and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Substantial evidence supports the ALJ's rejection of Dr. Grymaloski's opinions on this basis. Dr. Grymaloski's examination showed full range of motion in the knees, ankles, wrists, thumbs, forearm, elbow, and on hip abduction and adduction, as well as only slightly reduced range of motion in the shoulders, back, neck and on hip flexion. Tr. 343-344. The ALJ reasonably concluded that the significant limitation to lifting only two pounds frequently was not supported by the mild and minimal objective findings (i.e. the slight reduction in range of motion) and that Dr. Grymaloski failed to adequately explain the basis for his opinion despite these minimal findings. Similarly, the ALJ reasonably concluded that the significant restriction to sitting most of the day with only brief periods of standing and walking

was inconsistent with the objective testing which did not show any significant reduction in range of motion in the lower extremities. The ALJ also offered no explanation of the basis for this significant limitation despite the minimal objective findings supporting the opinion and, as such, the ALJ reasonably rejected the opinion on this basis. Dr. Grymaloski's vague and conclusory statement that Mr. Morrison is poorly conditioned from inactivity and weight gain is also insufficient to support the significant limitations opined. Accordingly, the ALJ reasonably rejected Dr. Grymaloski's March 2012 opinion.

In September 2012 and March 2013, Dr. Grymaloski completed Physical Evaluation forms in which he opined that Mr. Morrison was markedly limited in his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop and crouch. Tr. 357-358, 363-367. He opined Mr. Morrison was limited to sedentary work (i.e. able to lift 10 pounds maximum and frequently lift or carry lightweight articles and able to walk or stand only for brief periods) for 24 months. *Id.* In his September 2012 opinion, Dr. Grymaloski noted that Mr. Morrison complained of back pain, neck and bilateral shoulder pain and listed diagnoses of back pain, fibrositis and poor conditioning. Tr. 357. In his March 2013, opinion Dr. Grymaloski noted that Mr. Morrison complained of multiple joint pains, namely the neck, mid back, lower back, knees, ankles and shoulders and listed a diagnosis of hypermobility syndrome. Tr. 363-364. The ALJ discounted Dr. Grymaloski's opinions as unsupported by his own clinical findings. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide clear and convincing reasons for ALJ to reject treating physician's opinion). Substantial evidence supports this finding. Dr. Grymaloski's examinations again showed full range of motion in the knees, ankles, wrist, thumb, forearm, elbow, and on hip abduction and adduction, and slightly reduced range of motion in the shoulders, back, neck, and on hip flexion. Tr. 353-354, 366-367. Dr. Grymaloski

also noted some muscle knots and trigger points in the upper back.  Tr. 352.  However, Dr. Grymaloski fails to explain how these rather mild clinical findings translate to the significant limitation to sedentary work or to marked limitations in the ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop and crouch.  The Court notes that the ALJ did include a limitation to frequent postural limitations (i.e. push, pull, reach, stoop and crouch) in the RFC. Moreover, with respect to the marked limitation on handling, Dr. Grymaloski's examination shows normal range of motion with respect to wrist, thumb, forearm and elbow.  Thus, substantial evidence supports the finding that this limitation is likewise unsupported by Dr. Grymaloski's own clinical findings.  Tr. 354, 367.  Accordingly, the ALJ also properly rejected Dr. Grymaloski's September 2012 and March 2013 opinions.

Mr. Morrison also states that "[d]ue to page length restrictions, Plaintiff is unable to address in detail the ALJ's improper rejection of the [sic] Dr. Walker's and Dr. Hakeman's opinions of Plaintiff's mental limitations, but those issues are raised in the Request for Review at AR 335."  Dkt. 10 at 18.  This conclusory statement is insufficient to preserve a claim of error and the Court declines to address issues that were not properly raised in Mr. Morrison's Opening Brief.  *See Tommasetti*, 533 F.3d at 1038; *see Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at * 2 (unpublished opinion) (citing *Northwest Acceptance Corp. v. Lynnwood Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue); *see also Shinseki*, 556 U.S. at 409 ( "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").  Mr. Morrison did not request permission to file an over-length brief.  The Court will not permit Mr. Morrison to circumvent the page limitation imposed by the Scheduling Order by incorporating a separate external document by reference.  To do so would defeat the

purpose of page limits entirely and prejudice the Commissioner. As no specific argument was

made in the Opening Brief with respect to Dr. Hakerman's and Dr. Walker's opinions, the issues

are waived.

Accordingly, Mr. Morrison fails to establish the ALJ erred in evaluating the medical

opinion evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this

case is DISMISSED with prejudice.

DATED this 1 day of August 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE